## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 3:16-cv-00267 (VLB)** |
| | : | |
| **ANTHONY JOHNSON** | : | |
| | : | **SEPTEMBER 8, 2020** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

The Defendant, Anthony Johnson, brings this *pro se* motion for compassionate release under the First Step Act. Mr. Johnson seeks release from incarceration to home confinement or a reduction in his sentence to time served because of the risks presented by the COVID-19 pandemic. [ECF No. 75]. For the following reasons, Mr. Johnson's motion is DENIED.

## I. BACKGROUND

On November 15, 2011, the Honorable Holly B. Fitzsimmons, United States Magistrate Judge, authorized a criminal complaint charging Mr. Johnson with conspiracy to commit fraud with access devices in violation of 18 U.S.C. § 1029(a)(2). *United States v. Johnson*, 3:12-cr-00027, [ECF No. 1]. Between 2008 and 2010, Mr. Johnson and two accomplices engaged in an extensive scheme to steal credit and bank cards from customers at movie theaters around Connecticut. Mr. Johnson not only incurred many thousands of dollars in fraudulent charges on the stolen cards, but also generated profits selling items purchased with the cards

and used the victims' identities to create false driver's licenses.  *Id.*, [ECF No. 158 (PSR) ¶¶ 5-16].  On January 31, 2012, a grand jury returned an indictment charging Mr. Johnson with one count of unauthorized use of an access device, in violation of 18 U.S.C. §§ 1029(a)(2) and (c)(1)(a)(i), and one count of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2.  *Id.*, [ECF No. 13].   A superseding indictment issued on March 27, 2012, charging Mr. Johnson with eight counts of unauthorized use of an access device, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(c)(1)(a)(i), and 2; and two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2.  *Id.*, [ECF No. 36].

Mr. Johnson was arraigned on April 10, 2012 and pled not guilty to all counts. *Id.*, [ECF No. 41].

Jury selection was conducted on October 2, 2012.  *Id.*, [ECF Nos. 113, 114]. Trial commenced on October 16, 2012 and was completed on October 22, 2012, with a jury verdict of guilty on nine of the ten counts.  *Id.*, [ECF No. 132].

The pre-sentencing report calculated Mr. Johnson's base offense level under U.S.S.G. § 2B1.1(b)(11)(A) as 6.  *Id.*, [ECF No. 158 ¶ 22].  The following upward adjustments were applied:

- 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J) for more than $2,500,000 but less than $7,000,000 in victims' losses to theft, *id.* ¶ 23;
- Four levels pursuant to U.S.S.G. § 3B1.1(a) because the Defendant was an organizer or leader of criminal activity involving five or more participants or that was otherwise extensive, *id.* ¶ 28;
- Two levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A) for an offense involving ten or more victims, *id.* ¶ 24;
- Two levels pursuant to U.S.S.G. § 2B1.1(b)(4) for an offense involving the receipt of stolen property and a Defendant in the business of receiving and selling stolen property, *id.* ¶ 26;
- Two levels pursuant to U.S.S.G. § 2B1.1(b)(11)(A) for an offense involving the use of device-making equipment, *id.* ¶ 27;

- ▪ Two levels pursuant to U.S.S.G. § 2B1.1(b)(3) for an offense involving theft from the person of another, *id.* ¶ 25; and
- ▪ Two levels pursuant to U.S.S.G. § 3C1.1(A) for obstruction of justice.  *Id.* ¶ 30.

Consequently, Mr. Johnson's total offense level was 38.  *Id.* ¶ 33.

The PSR—noting his extensive criminal history that included four juvenile adjudications for larceny, robbery, forgery, and theft; ten adult convictions for, *inter alia*, grand theft, robbery, assault, and unlawful carrying of a firearm; arrests in seven states; and an attempt to plan a computer hacking scheme while in jail awaiting trial on the instant charges—classified Mr. Johnson as Criminal History Category VI.  *Id.* ¶¶ 39–84.  The resulting sentencing guideline range was 360 months to life imprisonment.  *Id.* ¶ 103.

At sentencing on October 24, 2013, the Court dismissed one count of unauthorized use of an access device with the Government's consent.  *Id.*, [ECF No. 230].  For the remaining eight counts of conviction, the Court imposed a below-guidelines sentence of 192 months' imprisonment.  *Id.*, [ECF No. 232].

Mr. Johnson appealed his conviction to the Second Circuit, arguing, *inter alia*, that the Court's calculation of his sentencing guidelines was procedurally unreasonable.  *Id.*, [ECF No. 233].  The Second Circuit affirmed Mr. Johnson's conviction and sentence in a summary order on January 23, 2015.  *United States v. Johnson*, 597 F. App'x 8 (2d Cir. 2015).

Mr. Johnson next filed a petition for habeas relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, a defective indictment, and due process violations.  [ECF No. 1].  This Court denied Mr. Johnson's amended petition. [ECF No. 60].  Since then, Mr. Johnson has filed a motion for amended or additional

3

findings.  [ECF Nos. 62, 63].  He has also appealed the denial of his habeas petition.  [ECF No. 66].  The Second Circuit is holding the appeal in abeyance until the Court rules on Mr. Johnson's motion for amended or additional findings, which is pending.  [ECF No. 74].

Mr. Johnson is currently incarcerated at the United States Penitentiary, Allenwood in White Deer, Pennsylvania.  [ECF No. 75-1 at 16, 35].  On April 20, 2020, he filed a written request with the warden petitioning for release to home confinement.  *Id.* at 33.  On April 30, 2020, the warden denied Mr. Johnson's request, stating that a medical review determined that he had not been diagnosed with a terminal illness and was able to care for his daily needs.  *Id.* at 34.  The warden also noted that since Mr. Johnson has a prior conviction for a crime of violence, he was ineligible for home confinement due to COVID-19 under 18 U.S.C. § 3624(c)(2).  *Id.*

On May 15, 2020, Mr. Johnson filed the instant Motion for Reduction of Sentence.  [ECF No. 75].  He argues that because he is 57 years old[1] and because he is suffering from several medical ailments, he is at greater risk for serious health complications if he were to contract COVID-19.  [ECF No. 75-1 at 9, 33].[2]

---

[1] The PSR indicates that Mr. Johnson is 56 years old.  3:12-cr-27-1, [ECF No. 158 at 2].

[2] In the compassionate release request Mr. Johnson submitted to the warden at Allenwood, he cites his hepatitis C diagnosis and the risk posed by COVID-19 as factors supporting his release.  There is no mention of hepatitis, however, in the memorandum he filed with the Court, which is largely concerned with the First Step Act and Mr. Johnson's allegedly improper sentence.  [ECF No. 75-1].  As Mr. Johnson is *pro se*, the Court will consider his hepatitis diagnosis and the arguments he submitted to the warden at Allenwood in addition to those in the instant motion and accompanying memorandum.

4

The Government opposes Mr. Johnson's motion, arguing that his medical condition does not place him at greater risk for COVID-19 complications, that Allenwood has had no inmate COVID cases, and that:

> Mr. Johnson's criminal convictions prior to his conviction in this District show that he has made a career of defrauding and stealing from others, and has not been averse to using violence, as demonstrated by his conviction for Robbery. . . . although the Government understands the risks associated with the COVID-19 pandemic and inmates in general and inmates with medical conditions specifically, the Government is also concerned with the risk associated with the release of inmates who have been convicted of crimes that prey on public businesses and hard-working people. . . . The release of Mr. Johnson . . . would be a serious mistake.

[ECF No. 78 at 12-14].

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 allows federal prisoners to petition courts directly for reduction of their sentences. Previously, only the Bureau of Prisons ("BOP") could move for compassionate release, and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222 (RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). A court may not modify a term of imprisonment once it has been imposed unless the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" per U.S.S.G. 1B1.13(2). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553(a) sentencing factors to the extent relevant. 18 U.S.C. § 3582(c)(1)(A).

At Congress's direction, the Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). As other courts have recognized, the Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. Jan. 8, 2020). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling circumstances" when:

> (A) Medical Condition of the Defendant.--
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor

6

cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.  [or]

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.  U.S.S.G. § 1B1.13, Commentary Application Note 1(A).

Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons.  However, the defendant bears the burden of showing that he is entitled to a sentence reduction. *Ebbers*, 432 F. Supp. 3d at 426.

### III. DISCUSSION

Before considering the substance of Mr. Johnson's motion, the Court must first address 18 U.S.C. § 3582(c)(1)(A)'s administrative exhaustion requirement.  Mr. Johnson submitted his compassionate release application to the warden at Allenwood on April 20, 2020, [ECF No. 75-1 at 33], and it was denied ten days later. *Id.* at 34.  In his response, the warden advised Mr. Johnson that if he was dissatisfied with the decision, he could appeal it through the Bureau of Prisons' Administrative Remedy Procedure.  *Id.*  District courts in this Circuit have held that "the same exhaustion procedure for routine administrative grievances … applies to requests for compassionate release."  *See United States v. Ng Lap Seng*, No. S5 15-CR-706 (VSB), 2020 WL 2301202 at *7 (S.D.N.Y. May 8, 2020); *see also United*

*States v. Bolino*, No. 06-cr-0806 (BMC), 2020 WL 32461 at *1 (E.D.N.Y. Jan. 2, 2020) (same).   28 C.F.R. § 571.63 outlines the process of appealing a denied compassionate release request, and 28 C.F.R. § 542.15 discusses in detail how a defendant must file such an appeal.   There is no evidence that Mr. Johnson sought relief through the Administrative Remedy Procedure, as outlined in those regulations, after the warden denied his request.   Instead, he filed the instant motion with the Court on May 12, 2020, only twenty-two days after submitting his initial application.   18 U.S.C. § 3582(c)(1)(A) allows the court to reduce a sentence only after the defendant has exhausted his administrative rights to appeal or after thirty days have elapsed since the defendant's initial request to the warden. Because neither of these conditions has been met, Mr. Johnson has not satisfied the statutory exhaustion requirements for relief.   The Court denies Mr. Johnson's motion on this basis.   Even if Mr. Johnson had satisfied his administrative exhaustion requirements, however, the Court would still deny his motion for release for the following reasons.

The Court has concluded in the past that "extraordinary and compelling" reasons for release may exist beyond those contained in the commentary to U.S.S.G. § 1B1.13.   *United States v. Jepsen*, No. 3:19-cv-00073 (VLB), 2020 WL 1640232 at *4 (D. Conn. Apr. 1, 2020).   The United States Centers for Disease Control and Prevention ("CDC") has advised that some populations have an especially heightened risk of becoming severely ill if they contract COVID-19.   Coronavirus Disease 2019 (COVID-19): People at Increased Risk, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

8

Mr. Johnson's medical records indicate that he suffers from none of the conditions the CDC considers risk factors for severe complications.  He has, however, been diagnosed with hepatitis C, [ECF No. 75-1 at 23, 25], which the CDC has advised may create an increased risk of serious illness.  *See* Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having chronic liver disease, especially cirrhosis … may increase your risk for severe illness from COVID-19.").  This language is similar to CDC findings regarding hypertension, where the CDC has advised that people with high blood pressure "might be at increased risk" of becoming seriously ill from COVID-19, About High Blood Pressure, CDC, *available at* https://www.cdc.gov/bloodpressure/about.htm, but has declined to make a more definitive statement about the connection.  Mr. Johnson has also been diagnosed with benign prostatic hyperplasia (commonly known as an enlarged prostate), which has no bearing on his risk of developing complications from COVID-19.

This Court and others have recognized that "an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their medical history … in combination with other factors" may be grounds for relief.  *United States v. Goins*, No. 3:05-cr-00292 (VLB), 2020 WL 4194534 at *3 (D. Conn. July 21, 2020).  *See also Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350 at *13 (D. Conn. May 12, 2020) ("… approximately 25 out of 48 COVID-19 related motions for compassionate release have been granted in this District alone since the crisis began.").  However, "[a]n

9

inmate's current diagnosis of a chronic condition does not constitute an 'extraordinary and compelling basis' for compassionate release, both under the U.S. Sentencing Commission guidance and when these terms are read in the plain sense." *Jepsen*, 2020 WL 1640232 at *4.

Mr. Johnson is not suffering from a terminal illness or one that makes it unfeasible to care for him. At FCI Berlin in December 2015, Mr. Johnson received an APRI (aspartate aminotransferase to platelet ratio index) test, which measures fibrosis of the liver. His score was 0.416, which indicates little to no scarring (a score of 2.0 or higher suggests cirrhosis). HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C, American Association for the Study of Liver Diseases, *available at* https://www.hcvguidelines.org/sites/default/files/full-guidance-pdf/AASLD-IDSA_HCV-Guidance_TxN-Simplified-Treatment_a.pdf. Based on this result, and because he did not have cirrhosis or any co-morbid conditions, Mr. Johnson was placed in the "routine priority" treatment category. [ECF No. 75-1 at 25]. Mr. Johnson mentions in his memorandum that he has high cholesterol, which can be a COVID-19 risk factor if it is severe enough to cause coronary artery disease, but he provides no documentation that his cholesterol level is abnormal or that he has been treated for either high cholesterol or heart disease. Mr. Johnson also claims that his "weaken[ed] immune system" places him in "grave danger" of death if he were to contract COVID-19. [ECF No. 75-1 at 33]. However, none of his diagnoses are included in the CDC's list of conditions and treatments that can render a person immunocompromised. If You Are Immunocompromised, Protect Yourself From

COVID-19, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html.

In sum, Mr. Johnson's medical records simply do not support his contention that he is "experiencing serious deterioration in physical health." [ECF No. 75-1 at 9]. On the contrary, there is nothing in his medical history to suggest that he bears an increased risk of COVID-19 complications. *Compare, e.g., Jepsen*, 2020 WL 1640232 (granting compassionate release for defendant who was immunocompromised and had three chronic conditions considered by the CDC to be risk factors for severe complications from COVID-19).

Nor does Mr. Johnson's age justify his release. While the CDC has stated that the risk of severe illness from COVID-19 increases with age, it has also advised that the greatest risk is among individuals aged 85 and older, and more than 8 out of 10 COVID-19 deaths in the United States have been adults 65 years of age and older. Coronavirus Disease 2019 (COVID-19): Older Adults, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. As mentioned, Mr. Johnson is 56 years old.

Additionally, there are presently no active COVID-19 infections at Allenwood. The facility has developed a protocol consistent with Bureau of Prisons Guidance, including suspending visitation, limiting movement within the prison, and maximizing social distancing. Mr. Johnson has failed to demonstrate that Allenwood's response is inadequate to manage the pandemic within that institution, or that the facility is unable to adequately treat him. His condition poses

a minimal challenge, even in the correctional setting, and is far from extraordinary or compelling.

Although Mr. Johnson's failure to meet statutory requirements for relief and his health are themselves sufficient grounds to deny the instant petition, the Court wishes to emphasize that the Defendant's well-documented criminal history makes a reduction of his sentence particularly inappropriate.  When considering compassionate release, the Court is required to consider, under 18 U.S.C. § 3553(a), "the nature and circumstances of the offense and the history and characteristics of the defendant."  *Id.*  The Court must also ensure that its decision to grant release will "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense", "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant."  *Id.*  Mr. Johnson argues that the period of approximately nine years he has served is sufficient to satisfy these requirements.  [ECF No. 75-1 at 9].

The Court disagrees.  Mr. Johnson has demonstrated a persistent aversion to compliance with the law.  The fact that he committed the instant crime *while on supervised release for an earlier conviction* militates strongly against returning hm to the community.  Mr. Johnson's history of fraud is especially concerning given that the economic uncertainties wrought by the ongoing pandemic "can lend themselves to even greater vulnerability" to schemes of this nature.  *See United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496 at *5 (W.D. Wash. May 7, 2020).  His intention to reside at the "same address as [his] last parole plan" and

12

his claim of a job offer at a nonexistent or inactive firm,[3] [ECF No. 75-1 at 36], do not inspire confidence in his likelihood of avoiding unlawful behavior.  The Court is also troubled by Mr. Johnson's refusal to accept responsibility for his wrongdoing, as well as his lack of remorse for the damage he inflicted on his victims.  While Mr. Johnson has had multiple opportunities to express regret for his conduct, he has chosen instead to maintain that he is the victim of a conspiracy involving his attorneys, the government, and the Court.  3:12-cr-00027, [ECF No. 16 (Att'y Mot. to Withdraw) at 2].  Releasing Mr. Johnson now would mean that he served approximately nine years for a crime for which the guideline range was thirty years to life.  The Court cannot conclude that such a sentence would promote respect for the law, deter future criminal conduct, or protect the public.  For all these reasons, the Court finds that Mr. Johnson remains a danger to the community, 18 U.S.C. § 3142(g), and therefore is not a suitable candidate for release.  And, as the Government argues, most cases involving defendants released during the COVID pandemic have involved defendants with less than one-year sentences or with only a short time to go until release, [ECF No. 78 at 12], unlike here.

## IV. CONCLUSION

Given his failure to meet the statutory requirements for relief, his medical history, and the lack of active COVID-19 cases at Allenwood—as well as the threat he would pose to the community if released—the Court DENIES Mr. Johnson's

---

[3] The downtown Philadelphia address that Mr. Johnson lists for "AG Consultant" is a meeting space for rent, and no business entity called 'AG Consultant' is registered in Pennsylvania.

motion for release.  [ECF No. 75].  The Defendant did not exhaust his administrative remedies or wait thirty days before filing his motion, as required by law. Additionally, because he has failed to establish extraordinary and compelling reasons for the requested sentence modification and remains a danger to the community, such a modification would be wholly incompatible with the statutory aims of sentencing.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 8, 2020