## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                            |   |                              |
|----------------------------|---|------------------------------|
|                            | : |                              |
| **ANTHONY JOHNSON**        | : |                              |
|                            | : | **No. 3:16-cv-00267 (VLB)**  |
| **v.**                     | : |                              |
|                            | : |                              |
|                            | : | **NOVEMBER 25, 2020**        |
| **UNITED STATES OF AMERICA** | : |                            |
|                            | : |                              |
|                            | : |                              |
|                            | : |                              |
|                            | : |                              |

## ORDER ON PETITIONER'S MOTION FOR AMENDED OR ADDITIONAL FINDINGS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 52(b) AND 59(e)

The Petitioner, Anthony Johnson, brings this *pro se* motion for amended or additional findings pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) following the Court's denial of his habeas petition.  [ECF Nos. 62, 63].[1]  For the following reasons, Mr. Johnson's motion is DENIED.

### I. BACKGROUND

On November 15, 2011, the Honorable Holly B. Fitzsimmons, United States Magistrate Judge, authorized a criminal complaint charging Mr. Johnson with conspiracy to commit fraud with access devices in violation of 18 U.S.C. § 1029(a)(2).  *United States v. Johnson*, 3:12-cr-00027, [ECF No. 1].  On January 31, 2012, a grand jury returned an indictment charging Mr. Johnson with one count of unauthorized use of an access device, in violation of 18 U.S.C. §§ 1029(a)(2) and

---

[1] Mr. Johnson filed his first Motion for Amended or Additional Findings on October 7, 2019, [ECF No. 62], which was followed by a second such motion on October 28, 2019.  [ECF No. 63].  The second filing adds a page missing from the first filing but is otherwise identical.  Because Petitioner is *pro se*, the Court will consider the two filings as one motion, considering all arguments made by Petitioner.

(c)(1)(a)(i), and one count of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2.  *Id.*, [ECF No. 13].  A superseding indictment issued on March 27, 2012, charging Mr. Johnson with eight counts of unauthorized use of an access device, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(c)(1)(a)(i), and 2; and two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2.  *Id.*, [ECF No. 36].  Mr. Johnson was arraigned on April 10, 2012 and pled not guilty to all counts. *Id.*, [ECF No. 41].

Jury selection was conducted on October 2, 2012.  *Id.*, [ECF Nos. 113, 114]. Trial commenced on October 16, 2012 and was completed on October 22, 2012, with a jury verdict of guilty on nine of the ten counts.  *Id.*, [ECF No. 132].

A Presentence Report was prepared in which it was reported that between 2008 and 2010, Mr. Johnson and two accomplices engaged in an extensive scheme to steal credit and bank cards from customers at movie theaters around Connecticut.  Mr. Johnson not only incurred many thousands of dollars in fraudulent charges on the stolen cards, but also generated profits selling items purchased with the cards and used the victims' identities to create false driver's licenses.  *Id.*, [ECF No. 158 (PSR) ¶¶ 5-16].

The Probation Officer calculated Mr. Johnson's base offense level under U.S.S.G. § 2B1.1(b)(11)(A) as 6.  *Id.*, [ECF No. 158 ¶ 22].  The following upward adjustments were applied:

- 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J) for more than $2,500,000 but less than $7,000,000 in victims' losses to theft, *id.* ¶ 23;
- Four levels pursuant to U.S.S.G. § 3B1.1(a) because the Defendant was an organizer or leader of criminal activity involving five or more participants or that was otherwise extensive, *id.* ¶ 28;

2

- Two levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A) for an offense involving ten or more victims, *id.* ¶ 24;
- Two levels pursuant to U.S.S.G. § 2B1.1(b)(4) for an offense involving the receipt of stolen property and a Defendant in the business of receiving and selling stolen property, *id.* ¶ 26;
- Two levels pursuant to U.S.S.G. § 2B1.1(b)(11)(A) for an offense involving the use of device-making equipment, *id.* ¶ 27;
- Two levels pursuant to U.S.S.G. § 2B1.1(b)(3) for an offense involving theft from the person of another, *id.* ¶ 25; and
- Two levels pursuant to U.S.S.G. § 3C1.1(A) for obstruction of justice. *Id.* ¶ 30.

Consequently, Mr. Johnson's total offense level was 38.  *Id.* ¶ 33.

The PSR—noting his extensive criminal history that included four juvenile adjudications for larceny, robbery, forgery, and theft; ten adult convictions for, *inter alia*, grand theft, robbery, assault, and unlawful carrying of a firearm yielded a Criminal History Category VI.  *Id.* ¶¶ 39–84.  The resulting sentencing guideline range was 360 months to life imprisonment.  *Id.* ¶ 103.

At sentencing on October 24, 2013, the Court dismissed one count of unauthorized use of an access device with the Government's consent.  *Id.*, [ECF No. 230].  For the remaining eight counts of conviction and notwithstanding Mr. Johnson's attempt to execute a fraud scheme while in custody on the instant offence, the Court imposed a below-guidelines sentence of 192 months' imprisonment.  *Id.*, [ECF No. 232].

Mr. Johnson appealed his conviction and sentence to the Second Circuit. *Id.*, [ECF No. 233].  The Second Circuit affirmed Mr. Johnson's conviction and sentence in a summary order on January 23, 2015.  *United States v. Johnson*, 597 F. App'x 8 (2d Cir. 2015).

Mr. Johnson next filed a petition for habeas relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, a defective indictment, and due process

3

violations.  [ECF No. 1].  After numerous delays occasioned by Mr. Johnson's numerous amendments to his habeas petition, the Court denied Mr. Johnson's amended petition on September 4, 2019. [ECF No. 60].

Mr. Johnson then filed a Motion for Amended or Additional Findings on October 7, 2019, [ECF No. 62], which was followed by a second Motion for Amended or Additional Findings on October 28, 2019.  [ECF No. 63].  The second filing added a page missing from the first filing but was otherwise identical.  Because Mr. Johnson is *pro se*, the Court will consider the two filings as one motion, considering all arguments made by Mr. Johnson.

Mr. Johnson appealed the denial of his habeas petition on November 12, 2019.  [ECF No. 66].

On May 7, 2020, the Second Circuit ruled that "[t]he appeal will be held in abeyance until the district court rules on Appellant's Federal Rule of Civil Procedure 59(e) motion.  *See* D. Conn. 16-cv-267, doc. 62.  Appellant's notice of appeal will become 'effective' when that motion is decided. *See* Fed. R. App. P. 4(a)(4)(B)(i)."  [ECF No. 74].

On May 12, 2020, Mr. Johnson moved for a reduction of sentence pursuant to the First Step Act and the Cares Act, citing concerns over his health and the COVID-19 pandemic.  [ECF No. 75].

On September 8, 2020, the Court denied Mr. Johnson's motion for sentence reduction, citing his failure to exhaust his available administrative remedies, as required, and his lack of medical conditions that might place him at higher risk of complications should he contract COVID-19 and the lack of COVID cases at

4

Allenwood FCI where Mr. Johnson is housed.  [ECF No. 80].  The Court also noted that "Mr. Johnson remains a danger to the community, 18 U.S.C. § 3142(g), and therefore is not a suitable candidate for release."  *Id.* at 13.

On September 14, 2020, the Government opposed Mr. Johnson's motion for amended or additional findings, [ECF No. 82], on September 22, 2020, Mr. Johnson appealed the Court's denial of his motion for sentence reduction, [ECF No. 84], and on October 22, 2020, Mr. Johnson replied to the Government's opposition to his motion for amended or additional findings.  [ECF No. 88].[2]

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 52(b) ('Rule 52(b)') provides in relevant part: 'On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly.'"  *Shiwbodh v. Caribbean Airlines Ltd.*, No. 3:12-cv-01706 (MPS), 2018 U.S. Dist. LEXIS 110815, at *5 (D. Conn. July 3, 2018).  "The purpose of Rule 52(b) 'is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence.'"  *Id.* (quoting *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993)).  "A Rule 52(b) motion[] is a limited vehicle, however, and it may not be used to 'introduce evidence that was available at trial but was not proffered, relitigate old issues, . . . [or to] advance new theories' based

---

[2] As explained, *infra*, Mr. Johnson's Reply to the Government's Opposition to his Motion for Amended or Additional Findings was due 14 days after the Government's Opposition, or on September 28, 2020, and was limited to 10 pages. D. Conn. L. Civ. R. 7(d).  Mr. Johnson, as noted, filed his Reply on October 22, 24 days late, and it was 35 pages long, 25 pages longer than allowed.

on 'the acuity of hindsight.'" *Id.* (quoting *Longshoremen's*, 831 F. Supp. At 169). "Nor does the Rule provide an avenue for a party merely ruing an oversight of its own in failing to introduce foreseeably relevant evidence." *Id.* (quoting *Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005 (DLC), 2000 U.S. Dist. LEXIS 12671, at *1 (S.D.N.Y. Sept. 5, 2000)).

"A motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) must be filed no later than 28 days of entry of the judgment." *Murillo v. A Better Way Wholesale Autos, Inc.*, No. 3:17-cv-01883 (VLB), 2019 U.S. Dist. LEXIS 176831, at *3 (D. Conn. Oct. 10, 2019). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* at *3-4 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple..." *Id.* at *4 (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *see also Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.")). "Such a motion 'is not a means to reargue those issues already considered when a party does not like the way the original motion was resolved.'" *Murillo*, 2019 U.S. Dist. LEXIS 176831, at *4 (quoting *Doe v. Winchester Bd. Of Educ.*, No. 3:10-cv-01179 (VAB), 2017 U.S. Dist. LEXIS 22899 (D. Conn. Feb. 17, 2017)). "A motion for reconsideration is an extraordinary

6

remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case.  To do otherwise would be a waste of judicial resources." *Id.* (quoting *Stoner v. Young Concert Artists, Inc.*, No. 11 CIV. 7279 (LAP), 2013 U.S. Dist. LEXIS 79112 (S.D.N.Y. May 20, 2013).

Section 2255 enables a prisoner in federal custody to petition a federal court to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255(a).  Relief under Section 2255 is generally available to rectify three irregularities, namely "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted).  The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995).

### III. DISCUSSION

Mr. Johnson's motion argues the following:

- The Court erred because the Clerk failed to file the 70-page hand-written portion of Mr. Johnson's habeas petition.  This was error, Mr. Johnson argues, because "he ha[d] a substantive due process right as required pursuant to 28 U.S.C. 2255(b) 'for the court to determine the issues and make findings of fact and conclusion [sic] of law with respect thereto." [ECF No. 63 at 1].

- The Court erred in not allowing Mr. Johnson a chance to reply to the Government's opposition to his amended habeas petition, which violated his procedural due process right to reply pursuant to the "rule governing Section 2255, Rule 5(e)," which states that "the petitioner may submit a reply

7

to the respondents [sic] answer or other pleading within a time fixed by the judge." [ECF No. 63 at 1-2].

- The Court erred in procedurally defaulting Mr. Johnson for not raising the issues contained in his habeas petition on direct appeal because "where a petitioner's collateral challenge includes claims of ineffective assistance of counsel, there is an important exception to the procedural default rule." [ECF No. 63 at 2-4].

- The Court erred in finding claims in Mr. Johnson's final, amended petition time-barred because "the Court ha[d] discretion to permit an amendment which clarifies or amplifies a claim or theory in a timely filed habeas petition after the AEDPA's one-year-period of limitations has expired," [ECF No. 63 at 4 (citing *United States v. Thomas*, 221 F.3d 430 (3d Cir. 2000)], and the arguments in his final, amended petition were merely clarifying and amplifying arguments he made in the initial, hand-written portion of his petition that "were not filed on the record as the law requires." *Id.*

- The Court should allow Mr. Johnson discovery on his ineffective assistance claims because he was "abandoned" by his attorneys of record who failed to "move for dismissal of indictment with prejudice." [ECF No. 63 at 4-6 (setting out the various ways counsel were ineffective in not challenging the indictment)].

- The Court should allow Mr. Johnson "an evidentiary hearing to prove his ineffective assistance of counsel claims for failure to take notice of the drafting of indictments and for Brady claim and all of the above claims mentioned herein." [ECF No. 63 at 6-7].

- The Court should "grant this motion and remand this case with further instructions in the interest of justice" because "[t]he above named petitioner has provided to [sic] this Court with issues of merit." [ECF No. 63 at 8].

The Government argues that Mr. Johnson is wrong in arguing that "because he raised ineffective assistance of counsel claims in his initial habeas petition – or in his handwritten portion of that petition – his claims of ineffective assistance of counsel raised in his amended petition were not untimely." [ECF No. 82 at 1]. This is because, according to the Government, Mr. Johnson's "amended petition's claims of ineffective assistance were untimely, because they did not relate back to

the original claims of ineffective assistance of counsel. *Id.* at 1-2 (citing *Mayle v. Felix*, 545 U.S. 644, 650 (2005) (holding late amended petition not relating back to original, timely petition time barred). Therefore, argues the Government, Mr. Johnson "had no ground to seek additional findings or amend his argument yet again." *Id.* at 2.

As an initial matter, the Court pauses to note the exceedingly high bar that Mr. Johnson must hurdle to get this motion granted. First, motions under Rule 52(b) can only be granted if there are "manifest errors of law or fact," and such motions are not to be used to "'introduce evidence that was available at trial but was not proffered, relitigate old issues, . . . [or to] advance new theories' based on 'the acuity of hindsight.'" *Shiwbodh*, 2018 U.S. Dist. LEXIS 110815, at *5 (quoting *Longshoremen's*, 831 F. Supp. at 169). The standard for motions brought under Rule 59(e) is "strict, and reconsideration will generally be denied unless the moving party can point to . . . matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Murillo*, 2019 U.S. Dist. LEXIS 176831, at *3-4 (quoting *Shrader*, 70 F.3d at 257). Further, habeas petitions themselves may be brought "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano*, 83 F.3d at 590. This is a high bar indeed.

As to Mr. Johnson's first argument that the Court erred by not having the Clerk file the 70-page hand-written portion of his habeas petition, that argument is without merit as the entire 70-page hand-written attachment to Mr. Johnson's

9

motion for amended or additional findings, [ECF No. 62-1], was, in fact, included in his original habeas petition, which numbered, including the type-written portion, exhibits, and hand-written portion, 157 pages.

Mr. Johnson's second argument, that the Court erred in not allowing him a chance to reply to the Government's opposition to his amended habeas petition, is likewise without merit.  Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts states that "[t]he moving party may file a reply to the respondent's answer or other pleading.  The judge must set the time to file unless the time is already set by local rule."  Here, the response date is set by local rule.  District of Connecticut Local Civil Rules state that "[a]ny reply memorandum, including cases brought under 28 U.S.C. § 2254 and 28 U.S.C. § 2255, must be filed within fourteen (14) days of the filing of the responsive memorandum to which reply is being made, as computed under Fed. R. Civ. P. 6."  D. Conn. L. Civ. R. 7(d) (emphasis added).  The Government's opposition to Mr. Johnson's amended habeas petition was filed on August 16, 2019.  [ECF No. 58].  Because of that, Mr. Johnson's Reply thereto was due 14 days later, on August 30, 2019.  Mr. Johnson did not submit his Reply Brief, however, until October 28, 2019, almost two months late.  [ECF No. 64].  Further, a reply memorandum may not exceed 10 pages.  D. Conn. L. Civ. R. 7(d).  Mr. Johnson's reply brief was 44 pages in length, more than four time the allotted number of pages.  *Id.*  The Court was, therefore, well within its discretion to rule on Mr. Johnson's amended habeas petition on September 4, 2019, five days after his Reply Brief was due.

Mr. Johnson's third argument, that the Court erred by procedurally defaulting him for not raising the issues in his amended habeas petition on direct appeal, is also meritless because a review of the Court's reasoning in denying Mr. Johnson's amended habeas petition reveals that not once did the Court find fault with the petition because Mr. Johnson failed to raise his claim on appeal.  *See generally* [ECF No. 60].   Therefore, as the Court did not base its denial on procedural default, i.e. his failure to raise these issues on direct appeal, as Mr. Johnson contends, his third argument is without merit.

Mr. Johnson's fourth and final argument, that the Court erred in finding the various arguments in the amended petition untimely due to them not relating back to his original, timely petition, also fails.   In reaching this decision, the Court addresses Mr. Johnson's motion in two ways.   First, the Court did not deny the petition solely on the basis that an argument did not relate back to the original petition.   A review of the Court's Order denying Mr. Johnson habeas relief reveals that in every instance the Court relied on alternative reasons for denying Mr. Johnson's petition <u>in addition to</u> the fact that the arguments contained in Mr. Johnson's amended petition were untimely because they did not relate back to Mr. Johnson's original, timely petition.

For example, regarding Mr. Johnson's argument that his indictment was deficient because it did not name the victims of his identity theft scheme, the Court pointed out that under the binding case *United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013), such naming is not required so long as the indictment "track[ed] the statutory language," which showed that the indictment charged the "knowing use

of the name of a real, as opposed to a fictitious, person unlawfully."  [ECF No. 60 at 27].  The Court's reasoning in the other areas it addressed is similar; in each case the Court put forth reasons for denying Mr. Johnson's amended petition <u>in addition to</u> the Court's untimeliness reason for denying the petition.  Because of that, Mr. Johnson's argument that his amended petition was timely would not have changed the outcome of the Court's decision on habeas review, and so Mr. Johnson's motion for reconsideration must be denied.

Second, a searching review of Mr. Johnson's original 157-page habeas petition reveals that none of the claims for habeas review in his amended petition truly relates back to his original, timely petition such that it merely "clarifies or "amplifies" that original petition.  For example, as the Government argues:

> With regard to ineffective assistance of counsel, Johnson's claims [in his original, timely petition] were very specific.  First, he asserted that his initial counsel – Margaret Levy, Esq. – whom he fired, was ineffective because: (1) she advised him to waive indictment 'without informing him of the nature of all charges of 18 U.S.C.S. 1028A Aggravated identity theft, until after she advised him to accept the government propose[d] plea agreement to plea to the complaint conspiracy to commit access device fraud' (Doc. 1 at 46); (2) Attorney Levy 'failed to inform him not to waive his right to indictment when she knew or should have known that the government was bringing forth other charges to propose plea agreement without the petitioner knowledge' (Doc. 1 at 47); and (3) she 'never made known on the record, or confirmed that petitioner understood the first waiver of the speedy trial act' (Doc. 1 at 52).  Second, Johnson claimed that after he fired Attorney Levy, his second CJA attorney, Frank Riccio, Jr., Esq., was ineffective for not filing a speedy indictment motion, which asserted that Attorney Levy tricked him into waiving a probable cause hearing, pre-indictment.  Doc. 1 at 72, 74.  Johnson also argues that Attorney Riccio's failure to request a lineup prior to trial for a witness from Pave Jewelers who identified him during trial violated Johnson's rights under the Sixth Amendment.  Doc. 1 at 81.  Third, at no time in his original petition, did he challenge the performance of his third CJA lawyer, Jonathan Einhorn, Esq. . . .

> In this case, there is no common core of facts related to the claims of ineffective assistance of counsel.  To be sure, Johnson claimed in his initial petition that Attorney Riccio should have filed a speedy indictment claim asserting that pre-indictment, Johnson was misled into waiving indictment and a probable cause hearing.  But that is substantially different from his untimely claim in his amended petition that Attorney Riccio should have filed a speedy trial claim – that is a claim that he was not brought to trial within 70 days of his indictment.
> . . .
> The same holds true for the untimely amended petition which for the first time raised claims of ineffective assistance of counsel for failure to raise Brady claims and which called into question Attorney Einhorn's sentencing and appellate performance.  Not one of these arguments arose out of the same 'conduct, transaction, or occurrence' of the original claim, which attacked Attorney Levy's obtaining from Johnson a waiver of indictment.  Rule 15(c)(2).  Accordingly, this Court's denial of his claims pursuant to the Rule of Procedural Default was correct and Johnson['s] argument that his amended petition merely 'clarifie[d] or amplifie[d] a claim or theory in a timely filed habeas petition,' Doc. 62 at 4, is not factually correct.

[ECF No. 82 at 2-3, 5-6].

The Court largely agrees with the Government.  A review of both Mr. Johnson's original, timely petition and his amended petition reveals that the claims in his amended petition are almost all unique, as the Government outlines above, and are not merely clarifications or amplifications of his original, timely claims. *Compare* [ECF No. 63] with [ECF No. 1].  Because of that, the Court was correct in denying the claims in Mr. Johnson's amended petition as time barred as they did not relate back to his original, timely petition.  [ECF No. 60].

The two areas where Mr. Johnson's motion gains some traction are as follows.  First, his amended petition, as noted in the Court's Memorandum of Decision denying Mr. Johnson's habeas petition, argued that his trial counsel was ineffective for not requesting a *Wade* hearing to challenge his in-court identification by an employee of Pave Jewelers.  [ECF 60 at 7-8].  Mr. Johnson's

13

original petition, upon thorough review of the 70-page handwritten portion, and giving this *pro se* petitioner all possible allowances, argues that trial counsel was ineffective for failing to request a pre-trial lineup identification or for failing to object to the in-court identification of Mr. Johnson.  In that sense, Mr. Johnson's amended petition could be construed as a clarification or amendment of his original petition, in that it objects to his counsel's failure to demand a *Wade* hearing and was therefore not necessarily untimely.  However, even if that is true, the Court explained previously, "the Court agrees that the procedure used to identify Mr. Johnson in court was minimally suggestive, if at all, and that to the degree that it was suggestive that was harmless because of co-defendant Lashirelle Bryant's [a different witness's] independent identification" of the Defendant in the courtroom during her testimony clearly and convincingly established that the challenged identification was based on the witnesses' observation of Mr. Johnson at the scene of the crime.  [ECF No. 60 at 25].  Moreover, as the Government argued, *Wade* is inapposite because there was no pretrial lineup subject to a *Wade* challenge. *United States v. Wade*, 388 U.S. 218 (1967).  Further, Mr. Johnson and his counsel were present when the challenged in-court identification was made and had the opportunity to cross examine the witness and impeach her testimony.  In sum, to the extent the procedure used to identify Mr. Johnson was suggestive, that procedure was harmless given the convincing identification by co-defendant Lashirelle Bryant.  *See Wade*, 388 U.S. at 242 (remanding for a determination of independent identification, which would make the introduction of a suggestive identification "harmless error."); *see also United States v. Archibald*, 734 F.2d 938,

14

943 (2d Cir. 1984), *as modified*, 956 F.2d 223 (2d Cir. 1984) (impermissibly suggestive in-court identification rendered harmless by other identifications that "would have served to convict Archibald."); *Boyd v. Henderson*, 555 F.2d 56, 62 (2d Cir. 1977) (impermissible identification is harmless error where other evidence supports conviction) (cited by *Archibald*, 734 F.2d at 943); *United States v. Williams*, No. 01-1464, 2002 U.S. App. LEXIS 22599, at *7 (2d Cir. Oct. 28, 2002) (holding that "[t]here is no *per se* rule requiring a hearing on the admissibility of identification testimony" and that "[t]he trial court was within its allowable range of discretion in leaving the trustworthiness of the evidence to the 'time-honored process of cross-examination.'") (quoting *Archibald*, 734 F.2d at 940); *United States v. Peeples*, 962 F.3d 677, 691-92 (2d Cir. 2020) (holding identification testimony must be excluded if it is "so unreliable" as to create "a very substantial likelihood o[f] irreparable misidentification" but finding potentially suggestive practice of having defendant seated at defendant's table during trial, even when no pre-trial identification occurred, "harmless beyond any reasonable doubt" when defendant identified by independent witnesses) (citing *Archibald*, 956 F.2d at 223).

The second area relates to appellate counsel Einhorn's allegedly ineffective performance on direct appeal. One of Mr. Johnson's arguments in his amended petition was that his appellate counsel failed to raise several issues, specifically his trial counsel's ineffective assistance for failure to seek dismissal based on *Brady* violations, and his sentencing counsel's ineffective assistance for failing to object to loss amount enhancements and the Court's alleged failure to notify Mr. Johnson that his sentences for aggravated identity theft could run consecutively.

[ECF No. 56 at 19 ("appellate counsel omitted several meritorious issues in favor of weaker ones.  See all issues raised <u>Supra</u>.")].

The Court disagrees with the Government's argument that Mr. Johnson's original petition did not discuss appellate counsel's performance.  [ECF No. 82 at 5-6].  In fact, at hand-written pages 50 to 58 of his original petition, or pdf pages 139-47, [ECF No. 1 at 139-47], Mr. Johnson did discuss several issues with appellate counsel's performance.  However, a careful review reveals his new grounds for attacking appellate counsel's performance are different than what he argued originally.  *Compare* [ECF No. 56 at 19, described above], with [ECF No. 1 at 139-47 (appellate counsel ineffective for not raising allegedly faulty in-court identification and other issues)].  Thus, Mr. Johnson's amended petition does not clarify or amend his original petition; rather, it raises wholly new grounds for attacking appellate counsel's performance.  Because of that, it does not relate back and is, as described in the Court's Memorandum of Decision, untimely.  The Court also points out that none of the issues Mr. Johnson suggests appellate counsel should have raised had merit, and therefore, as the Court described earlier, appellate counsel exercised reasonable professional judgment in not raising them on direct appeal and was therefore not ineffective.  [ECF No 60 at 24].

For the above reasons, the Court finds that Mr. Johnson has not met the extremely high bar for the Court to reconsider its Memorandum of Decision Denying Mr. Johnson's habeas petition.

## IV. CONCLUSION

Given his failure to meet the requirements for relief, the Court DENIES Mr. Johnson's motion for amended or additional findings. [ECF Nos. 62, 63]. Additionally, because he has failed to establish that he is entitled to relief, the Court declines to allow him discovery or an evidentiary hearing concerning these claims.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 25, 2020